United States District Court
Middle District of Florida
Jacksonville Division

**KAYLE M. FLINCHBAUGH,**

    *Plaintiff,*

V.                                                                        NO. 3:16-CV-1238-J-34PDB

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

## Report & Recommendation

This is a case under 42 U.S.C. § 1383(c)(3) to review a final decision of the Acting Commissioner of Social Security denying Kayla Flinchbaugh's[1] claim for supplemental security income.[2] Flinchbaugh seeks reversal and remand based on the Administrative Law Judge's ("ALJ's") treatment of opinions of Dr. Philip Yates and

---

[1]The case caption spells the plaintiff's first name as "Kayle," and her counsel uses that spelling. *See generally* Doc. 1, Doc. 14. But a form the plaintiff apparently completed herself indicates she spells her first name as "Kayla." *See* Tr. 286.

[2]The Social Security Administration uses an administrative review process a claimant ordinarily must follow to receive benefits or judicial review of a denial of benefits. *Bowen v. City of New York*, 476 U.S. 467, 471–72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. §§ 416.1400–416.1406. If dissatisfied with the initial determination, the claimant may ask for reconsideration. 20 C.F.R. §§ 416.1407–416.1418. If dissatisfied with the reconsideration determination, the claimant may ask for a hearing before an ALJ. 20 C.F.R. §§ 416.1429–416.1443. If dissatisfied with the ALJ's decision, the claimant may ask for review by the Appeals Council. 20 C.F.R. §§ 416.1466–416.1482. If the Appeals Council denies review, the claimant may file an action in federal district court. 20 C.F.R. § 416.1481.

The Commissioner substantially revised the regulations on the consideration of medical evidence for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017). Flinchbaugh filed her claim before that date. All citations are to the regulations in effect on the date of the ALJ's decision.

Richard Grissinger. Doc. 14. Concluding the ALJ applied the correct legal standards and substantial evidence supports the decision, I recommend affirmance.

## Background

Flinchbaugh was born in 1989 and last worked in April 2010. Tr. 212, 271. She has worked briefly as a fast-food cook and housekeeper.[3] Tr. 41–42, 271. She lives with her boyfriend and two young children. Tr. 43, 46. She alleges she became disabled in June 2013 from organic brain syndrome, cervical cancer, and a suppressed immune system. Tr. 38, 271. She proceeded through the administrative process, failing at each level. Tr. 1–6, 16–28, 59–80, 83–89, 96–102. This case followed. Doc. 1.

## ALJ's Decision

The ALJ entered a decision on March 3, 2015. Tr. 28.

At step one,[4] the ALJ found Flinchbaugh has not engaged in substantial gainful activity since July 2012 (the application date). Tr. 18.

At step two, the ALJ found Flinchbaugh suffers from severe impairments of asthma, gastroesophageal reflux disease, status post-gastrointestinal surgery,

---

[3]Flinchbaugh's education level is unclear. The ALJ found she has at least a high-school education. Tr. 27. She testified she did not complete high school or obtain a GED. Tr. 41. Dr. Yates's report noted that she told him she had graduated from high school and that she hoped to "obtain a GED." Tr. 565–66. Grissinger's report states she graduated from high school with a special-education "certificate" but hoped to earn a GED. Tr. 376. She does not contend her education level is material here.

[4]The Social Security Administration uses a five-step sequential process to decide if a person is disabled, asking whether (1) she is engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) she can perform any of her past relevant work given her residual functional capacity ("RFC"), and (5) there are a significant number of jobs in the national economy she can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). "Past relevant work is work [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough … to learn to do it." 20 C.F.R. § 416.960.

borderline intellectual functioning, dysthymic disorder, and anxiety-related disorder. Tr. 18.

At step three, the ALJ found Flinchbaugh has no impairment or combination of impairments that meets or medically equals the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. He considered the "paragraph B"[5] criteria to determine if her mental impairments meet or equal the criteria of a listing. Tr. 19–21. He found she has a mild restriction in activities of daily living; moderate difficulties in social functioning; and moderate difficulties maintaining concentration, persistence, and pace; and has had no episode of decompensation of extended duration. Tr. 20–21. He also considered the "paragraph C"[6] criteria and found she does not meet them. Tr. 22.

After stating he had considered the entire record and summarizing the medical evidence, the ALJ found Flinchbaugh has the residual functional capacity ("RFC") to perform "less than the full range of light work":

> The claimant can lift, carry, push, and/or pull twenty pounds occasionally and ten pounds frequently. She can stand and walk for approximately six hours and can sit for up to six hours in an eight-hour workday with normal breaks. She can stoop, crouch, and crawl occasionally but should never climb ladders or scaffolds. She must avoid exposure to vibration, unprotected heights, and hazardous machinery. Her work is limited to simple, routine, and repetitive tasks. The claimant should have no interaction with the general public and only occasional interaction with coworkers.

---

[5]The paragraph B criteria are used to assess functional limitations imposed by medically determinable mental impairments. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(C). Paragraph B requires a disorder of medically documented persistence resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulty maintaining social functioning; (3) marked difficulty maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, App'x 1 §§ 12.04, 12.06.

[6]Paragraph C lists additional functional criteria for some listings. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(A).

3

Tr. 22–26.

At steps four and five, the ALJ found Flinchbaugh has no past relevant work but can perform jobs the vocational expert identified (assembly machine tender, bottling line attendant, and packing line worker), and those jobs exist in significant numbers in the national economy. Tr. 27–28. He therefore found no disability. Tr. 28.

## Standard of Review

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. A court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id*. A court must affirm the ALJ's decision if substantial evidence supports it, even if the evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

## Analysis

Regardless of its source, the Social Security Administration "will evaluate every medical opinion" it receives. 20 C.F.R. § 416.927(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of … impairment(s), including … symptoms, diagnosis and prognosis, what [one] can still do despite impairment(s), and … physical or mental restrictions." 20 C.F.R. § 416.927(a). Opinions on issues that are dispositive of a case, such as whether a claimant is disabled or able to work, are not medical opinions because they are opinions on issues reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1).

An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a

reviewing court to determine whether the ultimate decision on the merits of a claim is rational and supported by substantial evidence." *Id.* "Unless [an ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (internal quotation marks omitted). If an ALJ does not "state with at least some measure of clarity the grounds for his decision," a court will not affirm simply because some rationale might have supported it. *Winschel*, 631 F.3d at 1179.

Unless the Social Security Administration gives a treating source's opinion controlling weight, it will consider several factors to decide the weight to give a medical opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factor. 20 C.F.R. § 416.927(c).

An acceptable medical source is a licensed physician (a medical or osteopathic doctor), licensed or certified psychologist, licensed optometrist, licensed podiatrist, or qualified speech-language pathologist. 20 C.F.R. § 416.913(a). An ALJ may also consider evidence from sources not listed as acceptable medical sources. 20 C.F.R. § 416.913(d). That evidence may show the severity of an impairment and how it affects a claimant's ability to work but cannot establish the existence of a medically determinable impairment or constitute a "medical opinion." Social Security Ruling ("SSR") 06-03p, 2006 WL 2263437 (Aug. 9, 2006).[7] Opinions from other sources "are

---

[7]SSRs are agency rulings published under the Commissioner's authority and are binding on all components of the Social Security Administration. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990). They are not binding on a court. *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B. 1981); *see Stein v. Reynolds Sec. Inc.*, 667 F.2d 33, 34 (11th Cir. 1982) (explaining the Eleventh Circuit is bound by decisions issued by Unit B panels of the former Fifth Circuit).

important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id*. The record "should reflect the consideration of opinions" from other sources, and the ALJ should explain the weight given to them "or otherwise ensure that the discussion of the evidence … allows a claimant or subsequent reviewer to follow [his] reasoning, when such opinions may have an effect on the outcome of the case." *Id*. The factors relevant in evaluating medical opinions "can be applied to opinion evidence from 'other sources.'" *Id*.

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 416.945(a)(1). The Social Security Administration uses the RFC at step four to decide if she can perform any past relevant work and, if not, at step five with other factors to decide if there are other jobs in significant numbers in the national economy she can perform. 20 C.F.R. § 416.945(a)(5).

The limitations found when assessing the "paragraph B" criteria are not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The mental RFC assessment "requires a more detailed assessment by itemizing various functions." *Id*.

The mental demands of unskilled jobs include "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4–5 (January 1, 1985). If an ALJ finds a claimant has moderate difficulties in concentration, persistence, or pace, he must implicitly or explicitly account for any related limitation in his hypothetical question to the vocational expert or find the claimant's ability to work is unaffected by the difficulties. *Winschel v. Comm'r*, 631 F.3d 1176, 1181 (11th

---

In light of the amendments to the regulations effective March 27, 2017, the Social Security Administration rescinded SSR 06-03p as inconsistent with the revised regulations. *See* Rescission of Social Security Rulings 96-2P, 96-5P, and 06-3P, 2017 WL 3928298 (Mar. 27, 2017). Because the revised regulations do not apply here, SSR 06-03p applies.

Cir. 2011). Failure to do so renders the hypothetical question to the vocational expert incomplete and precludes reliance on the expert's testimony as substantial evidence supporting finding the claimant able to work. *Id.* "[R]estricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence, and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite limitations in concentration, persistence, and pace." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1180).

An ALJ's determination may be implicit, but the "implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court is not required to "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

Dr. Yates saw Flinchbaugh in June 2013 for a psychological evaluation. Tr. 564–74. He described her reported history and observed behavior during testing, noting she had a "generally depressed and inept attitude" and "very low" self-confidence. Tr. 565–66. He observed she showed increased effort with psychomotor productivity but otherwise displayed "low expectations, negative expectations, low frustration[,] [sic] and a sense of not being able to do well on anything." Tr. 566–67. He administered a test yielding a full-scale IQ of 71. Tr. 567. He also administered a "continuous performance test," which indicated attention-related deficits, vigilance limitations, inconsistent reaction times, and "a number of neuropsychologically based problems." Tr. 571–72. He observed her thinking is tentative and self-defeating; she is "a very dependent individual"; she is "extremely depressed" and "always anxious [and] hypervigilant"; and she has "a very poor self-image, a very poor self-concept, [and] remarkably limited coping skills." Tr. 572. He noted many of her difficulties

were offset by her relationships with her boyfriend and his aunt. Tr. 572–73. He opined, "She does not have any sense of self-competence, she is easily disorganized and maladaptive when under the most mild levels of stress, and she is almost completely inept in terms of functioning on her own." Tr. 573. Under, "Summary and Recommendations," he provided the following opinions:

> Kayla's intellectual capabilities fall within the Borderline range of intelligence.
>
> She shows very modest academic competencies, to the point where almost any type of academic training would need to be hands-on, extremely specific, simple, and remarkably concrete in nature.
>
> She does not show adequate reading comprehension to deal with literacy or classroom based training.
>
> She has a number of deficits in her thinking, information processing and ability to use, retain and manipulate information on an intellectual basis, so that, at best, she could benefit from having extremely specific, [sic] as well as extra time to learn new tasks, she would need to be placed in situations where all she has to do is deal with sequential specifics and where learning would occur through imitation, very simple task demonstration and deal with tasks that require few, if any, decisions, which do not call for priority setting, and which are relatively repetitive.
>
> However, also complicating Kayla's functioning is that she suffers with a mixed and complex disorder in which depression, fear, post-traumatic stress and anxiety predominate. Under stress, she is quite prone to either withdraw or also experience thinking and behavior that becomes grossly disorganized. She is going to need careful psychiatric assessment for medication needs, she would need lengthy, simple and cognitive/behavioral trauma focused therapy, as well as to be trained in stress-inoculation to increase her coping skills.

Tr. 573. He diagnosed her with reading disorder; attention deficit hyperactivity disorder, predominantly inattentive type; generalized anxiety disorder; dysthymic disorder; and post-traumatic stress disorder. Tr. 573–74.

Grissinger saw Flinchbaugh in August 2013 (a few months after Dr. Yates saw her) for a vocational evaluation. Tr. 376–84. In a report, he discussed her background

8

and observations of her behavior during the evaluation. Tr. 376–77. He noted that she reported her relationship with her boyfriend had deteriorated since the time of her evaluation by Dr. Yates. Tr. 376. He observed she had "very scattered" thoughts and conversation, and she was "pleasant as long as the evaluator was qui[et] and listening to her [but] quite suspicious when asked questions." Tr. 377. He observed she remained cooperative "with some exception" during the evaluation and was "generally able to remain focused and on-task for the duration of the test administration." Tr. 377. On "functional limitations in employment and her personal life," he opined:

> Kayla is limited in her ability to learn new information, has limited academic skills, *poor insight and judgment abilities*. She is unable to make critical decisions, and is limited to routine work involving limited decision-making processes. She is unable to read instructions and comprehend them beyond a third grade level. She presents as being argumentative and in denial of disorders in her life or how they might be affecting her life. She tends to blame all her woes on others and does not take any blame for her situation. She has difficulty with impulsiveness. Kayla does not currently socialize well with others due to high stress. She presents as being explosive at this time, quite in need of therapy. Major barriers to work are her short-sightedness and poor socialization abilities, rejecting the fact that she needs therapy despite her verbalized state of woes.

Tr. 378 (emphasis in original).

Grissinger tested Flinchbaugh's ability to perform a variety of work-related tasks and made the following findings: her "ability to perform tasks that involve small finger dexterity was considerably above-average"; she could "perform tasks involving sorting by color and alpha-numeric system at competitive speed and accuracy"; she scored "lower than trainable norms" with simulated assembly, possibly because she did not enjoy performing that work sample; she had "an entry level ability to perform work in quality control of mechanical parts inspections"; and she had normal color vision. Tr. 379–81. He discussed Dr. Yates's findings concerning her intellectual functioning and academic skills. Tr. 381.

9

Under, "Vocational Summary/Implications," Grissinger provided the following opinions. Flinchbaugh "is not a candidate for certification programs as she desires, but rather should focus on elemental jobs in which she can perform repetitious jobs without formal training." Tr. 382. She has an "exceptionally low" potential for obtaining a GED. Tr. 382. She "should not return to any job that requires multi-tasking or rapid work under pressure of time." Tr. 382. Her past work as a housekeeper is "more in keeping" with her ability, but it also requires speed and accuracy. Tr. 382. She demonstrated an ability to "work at competitive speed when she puts forth the effort," but she may need assistance from a job coach for any job due to her personality. Tr. 382. She has transferable skills for the housekeeping job, but her "most difficult barrier" is her socialization skills. Tr. 382. She "is not properly prepared for placement without increased stabilization of her psyche" through therapy, though she is likely to resist therapy. Tr. 382. She needs to attempt to regain social security income and "be prepared to work part-time in jobs that primarily have requirements of working with 'things as opposed to people.'" Tr. 382–83. She cannot work in a multitasking job that would require her to constantly prioritize work duties, but "a daily routine that rarely changes is most suitable for" her. Tr. 383. She "needs to initiate psychiatric intervention and follow up therapy before considering employment or else[] the cycle of being fired will likely continue." Tr. 383. "Therapy needs to be successful and may require several months or longer before [she] is ready for employment." Tr. 383. Her ability to remain on-task "depends much on her interest for the task. If she is interested she can work quickly and accurately. She works best when she is alone and working with 'things.'" Tr. 383. He concluded:

> Overall, Kayla will be difficult to place based on her reluctance to allow someone to help her, although she is verbalizing the need for help in almost every facet of her life. Successful placement will depend much on her ability to accept help in areas in which she does not see as a problem. Her potential for sustained work without considerable intervention as mentioned above is not high. With a job coach, I suggest working in the area of housekeeping. She will need interviewing skills and assistance completing employment forms.

10

Tr. 384.

In evaluating Flinchbaugh's social functioning at step three, the ALJ observed she alleged having difficulty getting along with family, friends, neighbors, and others. Tr. 20. He observed she also admitted she could shop weekly and care for her children. Tr. 20. He acknowledged Dr. Yates's opinion that, under stress, she is prone to withdraw or experience grossly disorganized thinking and behavior and would need careful psychiatric assessment and treatment. Tr. 20. He acknowledged Grissinger's opinions that she is not prepared for job placement without further stabilization of her psyche, her socialization skills present her most significant barrier to working, she needs long-term therapy, she would be difficult to place in a job due to her reluctance to accept help, and a job coach would benefit her. Tr. 20. He gave some weight to those opinions but found they did not "appropriately account for [her] normal presentation at physical examinations." Tr. 20. He found she has moderate difficulties with social functioning. Tr. 20.

In evaluating Flinchbaugh's difficulties with concentration, persistence, or pace at step three, the ALJ discussed her alleged difficulty "understanding, remembering, concentrating, and handling stress or changes in routine" and her alleged inability to use a check book or money orders. Tr. 20. He observed she admitted "finishing what she starts as well as being able to drive, pay bills, count change, and handle a savings account." Tr. 20. He acknowledged Dr. Yates's opinions concerning her functioning and Dr. Yates's observation that she showed some problems maintaining attention, including her increasingly inconsistent reaction times during testing. Tr. 21. He acknowledged Grissinger's opinions that, given her borderline intellect, she should focus on elemental, repetitious jobs not requiring formal training; and that she should not perform any job requiring multitasking or rapid work with time pressures. Tr. 21. He observed she "was generally able to remain focused and on-task for the duration of her vocational evaluation" with

Grissinger in August 2013. Tr. 21. He found she "has ongoing difficulty in this area" but "her problems are moderate." Tr. 21.

In discussing his RFC finding, the ALJ observed there was no evidence Flinchbaugh received mental-health counseling or psychiatric treatment, was ever admitted to a crisis-stabilization unit, or was ever hospitalized for psychiatric problems. Tr. 25. He stated he gave "the most weight" to Dr. Yates's and Grissinger's opinions, explaining:

> [T]hey thoroughly examined the claimant and the mental status findings and diagnostic test results in their reports support limiting claimant to simple, routine, repetitive tasks with no interaction with the general public and only occasional interaction with coworkers. However, I decline to fully adopt all of their opinions, to the extent inconsistent with the substantial evidence of record, including the claimant's diverse activities of daily living and her continually cooperative and pleasant presentation noted in physical treatment records.

Tr. 26.

Substantial evidence supports the ALJ's evaluation of Dr. Yates's and Grissinger's opinions. Dr. Yates's summary and recommendations primarily focus on Flinchbaugh's need for simple, routine, and repetitive work tasks with specific instructions and little to no decision making and for therapy to address depression, anxiety, and post-traumatic stress. *See* Tr. 573. Likewise, Grissinger opined she has the ability to perform simple, routine, and repetitive tasks but would have difficulty socializing with others. Tr. 377–83.

The ALJ accounted for most of Dr. Yates's and Grissinger's opinions by limiting Flinchbaugh to simple, routine, repetitive work with no interaction with the public and only occasional interaction with coworkers. The ALJ acknowledged Dr. Yates's opinions and findings concerning Flinchbaugh's attention deficits and Grissinger's opinions concerning her socialization skills and need for psychiatric stabilization but found they did not require additional functional limitations in light of evidence that

12

she engaged in many daily activities and was pleasant and cooperative at medical appointments. *See* Tr. 26. He observed she could drive, care for her children, prepare meals, wash dishes, clean, iron, mow the lawn, vacuum, shop, check Facebook on her phone, pay bills, count change, and handle a savings account. Tr. 23. He observed she had been able to obtain a driver's license and had remained "focused and on-task for the duration of her vocational evaluation" in August 2013. Tr. 23. Substantial evidence supports those observations. Tr. 46–49, 51, 288–89, 349. He observed that, at medical appointments, she often had been alert, oriented, cooperative, pleasant, and conversant, and she had maintained good eye contact. Tr. 24. Substantial evidence also supports those observations. Tr. 421, 423–26, 428, 430, 437, 496–502, 504–08, 514, 516–17, 526, 537, 543, 587–89, 595, 598, 602, 608, 611–12. Those reasons support the ALJ's finding that her difficulties with social functioning and in maintaining attention do not require limitations beyond those found because they demonstrate she is able to regularly perform a range of simple tasks and maintain sufficient attention and composure to complete simple activities.

Flinchbaugh argues the ALJ failed to account for Dr. Yates's opinions concerning her limitations in attention, persistence, and pace and failed to explain why he did not account for them. Doc. 14 at 10. She cites several Eleventh Circuit cases discussing the need to account for limitations in concentration, persistence, and pace in a hypothetical question posed to a vocational expert. Doc. 14 at 10–11.

The ALJ considered Dr. Yates's opinions concerning Flinchbaugh's difficulties with concentration, persistence, and pace in determining whether her impairments meet or equal the severity of a listing. *See* Tr. 20–21. He found moderate difficulties in those areas. Tr. 20. He then stated the "limitations identified in the 'paragraph B' … criteria are not a residual functional capacity assessment" and observed the mental RFC at steps four and five "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B." Tr. 22. He stated the RFC assessment "reflects the degree of limitation [he] found in the

13

'paragraph B' mental function analysis." Tr. 22. He gave significant weight to many of Dr. Yates's opinions but rejected the opinions to the extent they conflicted with the RFC finding by indicating additional limitations in attention and persistence. Tr. 26. He explained such limitations were inconsistent with Flinchbaugh's many daily activities and unremarkable presentation at medical appointments. Tr. 26. As discussed, substantial evidence supports those findings. The ALJ therefore adequately explained why he did not account for additional functional limitations arising from Dr. Yates's opinions concerning Flinchbaugh's ability to maintain attention and persist in activities.

Flinchbaugh argues "there is no indication that [she] performed her daily activities eight hours a day, five days a week" and she "is allowed to be pleasant at her medical appointments." Doc. 14 at 12. She argues the ALJ's observations concerning her activities and presentation at appointments do not "change the fact that she has significant difficulties concentrating and paying attention." Doc. 14 at 12.

The ALJ did not rely on Flinchbaugh's activities to find she can concentrate and maintain attention for an uninterrupted 8-hour period. Instead, he found her activities supported finding that she could maintain sufficient attention and concentration to perform simple, routine, and repetitive work during a normal work schedule. Evidence of her activities conflicts with Dr. Yates's opinion that she was almost completely dependent on others and had "remarkably limited coping skills." The ALJ could rely on inconsistencies between her activities and Dr. Yates's opinions in evaluating those opinions. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion."). Likewise, the ALJ did not find Flinchbaugh's presentation at appointments incompatible with a finding of disability. Instead, he found her presentation inconsistent with Dr. Yates's opinion that she withdraws or experiences

disorganized thoughts under even mild stress and Grissinger's opinion that her socialization skills present her most significant barrier to working. *See* Tr. 20.

Flinchbaugh argues dictum from *Winschel v. Commissioner*, 631 F.3d at 1180—that limitations to simple, routine tasks or unskilled work adequately account for limitations in concentration, persistence, or pace if "medical evidence" supports that finding—does not apply. Doc. 14 at 12. She argues no medical evidence supports finding her ability to work is unaffected by her moderate limitations in maintaining concentration, persistence, or pace, and "every single firsthand evaluation of [her] functioning supported severe and disabling limitations." Doc. 14 at 12–13.

As discussed, the ALJ relied on substantial evidence supporting that a limitation to simple, routine, repetitive work adequately accounted for Flinchbaugh's difficulties maintaining concentration, persistence, or pace. Even Dr. Yates's opinion provides some support for that finding; though he observed the results of the tests he administered supported that she has significant attentional deficits, under the "Summary and Recommendations" section of his report, he opined:

> [S]he could benefit from having extremely specific [tasks], as well as extra time to learn new tasks, she would need to be placed in situations where all she has to do is deal with sequential specifics and where learning would occur through imitation, very simple task demonstration, and deal with tasks that require few, if any, decisions, which do not call for priority-setting, and which are relatively repetitive.

Tr. 572–73. He also noted her functioning was complicated by depression, anxiety, fear, and post-traumatic stress, and she would benefit from "careful psychiatric assessment for medication needs," therapy, and training in "stress-inoculation to increase her coping skills." Tr. 573. Those opinions suggest Flinchbaugh can perform work that is simple, routine, and repetitive despite her attention limitations.[8]

---

[8]As the Acting Commissioner observes, since *Winschel*, the Eleventh Circuit has held in several unpublished opinions that limitations to simple, routine, repetitive work (or similar limitations) adequately account for moderate difficulties in maintaining

Flinchbaugh provides little argument on the ALJ's evaluation of Grissinger's opinions. She summarizes the opinions, recites the ALJ's explanation of the weight he gave them, points to some opinions she apparently believes are inconsistent with the RFC finding, and concludes, "Mr. Grissinger's opinion supports a finding of disability in this case. The ALJ failed to apply the correct legal standards and made findings not supported by substantial evidence." Doc. 14 at 14–15.

---

concentration, persistence, and pace. *See, e.g.*, *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 (11th Cir. 2016) (limitations to sustained concentration for two-hour periods on short, simple instructions and occasional contact with coworkers and public on routine matters accounted for moderate limitations in social functioning and concentration, persistence and pace; doctor had opined plaintiff could attend for two-hour intervals and perform simple, routine, repetitive tasks with reduced social contact); *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015) (limitations to simple unskilled, routine, repetitive tasks with one- to three-step instructions accounted for moderate difficulties maintaining concentration, persistence, or pace); *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014) (limitations to understanding, remembering, and carrying out simple instructions and procedures, difficulty with complex tasks, and ability to sustain tasks and perform at an acceptable pace accounted for moderate difficulties maintaining concentration, persistence, or pace; plaintiff had reported she had "fine" ability to understand instructions, and state-agency consultant had found she could perform simple tasks at an acceptable pace); *Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 902 (11th Cir. 2014) (limitation to simple, repetitive tasks with superficial interaction with others accounted for moderate difficulties in social functioning, concentration, and persistence; state-agency psychologists had found plaintiff could understand and follow simple instructions, concentrate for short periods, and make simple work-related decisions); *Kunz v. Comm'r of Soc. Sec.*, 539 F. App'x 996, 996 (11th Cir. 2014) (limitations to simple, routine tasks and occasional interaction with others accounted for moderate difficulties maintaining concentration, persistence, or pace; state-agency psychologists had found plaintiff could understand and remember simple instructions, concentrate on and perform simple tasks, and interact with others briefly); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950–51 (11th Cir. 2013) (limitations to one- to three-step non-complex tasks adequately accounted for moderate difficulties maintaining concentration, persistence, or pace); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 688, 690 (11th Cir. 2013) (limitations to simple one- and two-step tasks with minimal social interaction and no public contact adequately accounted for moderate difficulties with social functioning, concentration, persistence, and pace; doctors had opined plaintiff could follow short, simple instructions and would need work environment with minimal public interaction and few coworkers); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013) (limitations to occasional interaction with the public and coworkers, simple, routine, repetitive tasks with up to three-step demands, and occasional changes in work setting, judgment, or decision-making accounted for moderate difficulties with social functioning, concentration, persistence, and pace).

Flinchbaugh arguably fails to articulate any error in the ALJ's evaluation of Grissinger's opinions. His opinions are largely consistent with the ALJ's RFC finding; he opined Flinchbaugh can perform simple, routine, repetitive work. Tr. 382–84. To the extent he opined her "socialization skills" presented her most significant barrier to working, the ALJ accounted for some social limitations but concluded, based on substantial evidence, that she could sustain some level of social interaction. To the extent he opined her impairments would prevent her from working fulltime without further psychiatric stabilization, that opinion, even if from an acceptable medical source (which Grissinger is not), is on an issue reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d). Substantial evidence supports the ALJ's finding that other evidence in the record indicates she can work.

Remand to reconsider Dr. Yates's and Grissinger's opinions is unwarranted.

## Recommendation

Because the ALJ applied the correct legal standards and substantial evidence supports his decision, I recommend:

(1)   affirming the Acting Commissioner's decision;

(2)   directing the Clerk of Court to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) affirming the Acting Commissioner's decision; and

(3) directing the Clerk of Court to close the file.[9]

**Entered** in Jacksonville, Florida, on February 1, 2018.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: The Honorable Marcia Morales Howard
Counsel of Record

---

[9]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

18